Edwin L. COX, Jr., Appellant,

v.

MESA PETROLEUM COMPANY,
Appellee.

No. 8894.

Court of Civil Appeals of Texas,
Amarillo.

Sept. 25, 1978.

Rehearing Denied Oct. 23, 1978.

Templeton & Garner, Amarillo, Garner, Vickers & Purdom, Jack O. Nelson, Jr., Lubbock, for appellant.

Sanders, Saunders, Brian, Finney & Thomas, Jerry K. Sawyer, D. D. Dent and Barry F. Cannaday, Amarillo, for appellee.

DODSON, Justice.

Appellant Edwin L. Cox, Jr., the plaintiff and cross-defendant below, challenges the adverse portion of a judgment awarding appellee Mesa Petroleum Company, a corporation, $16,374.10, together with nine percent interest from the date of judgment,[1] on its cross-action for the unpaid contract price of certain cattle feed commodities used by Cox. Cox maintains that the trial court erred in awarding the judgment based upon the contract price rather than the market price of each of the commodities because the jury determined, with regard to his action for breach of warranty of merchantability, that each of the commodities were unmerchantable. However, issues essential to Cox's breach of warranty claim— whether Cox notified Mesa that the individual commodities were considered nonconforming when used—were neither requested nor submitted to the jury. We determine that the evidence fails to conclusively establish the required notice of unmerchantability for each of the commodities. The judgment is affirmed.

On December 16, 1974, Cox purchased from Mesa the Randall County Feedyard and other assets, including feed commodities which were detailed in their Purchase and Sale Agreement. The Agreement provided that Cox was to purchase within specified times all the cubed alfalfa (not in issue), baled alfalfa, "old" silage and "new" silage located at the feedyard. Payments for the commodities were to be made on a continuing basis when used by Cox at the following prices: baled alfalfa at $65 per ton, "old" silage at $15 per ton and "new" silage at the average price per ton which Mesa had paid, not to exceed $20 a ton. Cox, however, was not obligated to purchase any unmerchantable commodities.

Cox brought suit against Mesa on August 18, 1975, alleging a breach of express and implied warranties of merchantability with regard to feed commodities purchased under the contract. Cox also sought damages for the cancellation of a leasehold interest arising out of the contract. Mesa answered and filed its cross-action against Cox for the full contract price for all the feed commodities. Mesa further claimed damages against a former employee, James Herring, and Cox for fraud arising out of the contract negotiations and closing.

The jury absolved Herring and Cox of any fraud in the transaction and found Cox to have been damaged in the amount of $50,000 for the wrongful cancellation of the lease. Following its finding that all commodities were unmerchantable when used, the jury determined the market value of baled alfalfa to have been $32 a ton, of "old" silage $11.25 a ton and of "new" silage $15 a ton. Both Cox and Mesa moved for judgment on the verdict and Mesa filed its motion for judgment notwithstanding the verdict. Mesa also moved for the court to enter express findings of fact with regard to the issues of novation and notice. In response to this latter motion, the trial court entered two of Mesa's requested findings prior to judgment. First, Cox and Mesa were found to have agreed upon a novated price of $60 a ton for the baled alfalfa used in March and April 1975. Secondly, the trial court found:

> That the letter of June 3, 1975 from Ed L. Cox, Jr. to Gaines L. Godfrey, Mesa's Vice President, (Plaintiff's Exhibit 76) constituted reasonable notification with reservation of the rights by Cox for *that quantity of baled alfalfa accepted and used subsequent to the date thereof but did not constitute notice as to the other feedstuffs* (emphasis added).

This constituted the sole express finding on the issues of notice.

The trial court determined that Mesa was entitled to payment in the amount of $372,-831.63 for the stipulated quantities of all feed commodities used by Cox. Previous payments totalling $306,457.53 were credited against the $372,831.63. The resulting

---

1. This net judgment reflects offsets and credits allowed by the trial court.

$66,374.10 amount was offset by the $50,000 jury award to Cox, culminating in a net judgment of $16,374.10 with interest for Mesa.

The specific portion of the judgment which Cox complains of provides that Mesa is entitled to: the contract price of $65 per ton for baled alfalfa used from December 1974 through February 1975; the novated price of $60 per ton for baled alfalfa used during March and April of 1975; the contract price of $15 per ton for "old" silage used from January through August 1975; the maximum contract price of $20 per ton for "new" silage used in August 1975; and $15.30 per ton (as found by the jury) plus $1.00 per ton shipping and packing costs for "new" silage used from September 1975 through December 1976. Cox maintains that he is obligated to pay only the market price for the baled alfalfa used from December 1974 through April 1975, and for all the "old" and "new" silage which was used. This contention is based on the jury finding that all commodities were unmerchantable and the argument that Cox conclusively established notice of such nonconformities to Mesa.

█ We first address the issue of notice with regard to the baled alfalfa. The undisputed evidence shows that Cox accepted and used 1,662.93 tons of baled alfalfa from December 1974 through April 1975. As a general rule, the buyer must pay the contract rate for any goods accepted. Tex.Bus. & Com.Code Ann. § 2.606 (1968). However, section 2.714(a) of the Business and Commerce Code provides that a buyer who has accepted goods and given notice to the seller under section 2.607(c) may recover damages for any nonconformity resulting from the seller's breach. Section 2.607(c)(1) states: "Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tex.Bus. & Com.Code Ann. § 2.607(c)(1) (1968).

█ The questions of notice and merchantability of the commodities are essential elements of Cox's breach of warranty claim; they are not independent grounds of recovery. The burden of alleging and proving these elements was on Cox. Tex.Bus. & Com.Code Ann. § 2.314 (1968); *Clarostat Mfg., Inc. v. Alco Aviation, Inc.*, 544 S.W.2d 788, 792-93 (Tex.Civ.App.—San Antonio 1976, writ ref'd n. r. e.). For Cox to prevail on this appeal the evidence must conclusively show that he gave Mesa notice of nonconformity of the baled alfalfa consumed prior to June 3rd and with regard to all the "old" and "new" silage.

The evidence with regard to the issues of notice shows that Cox assumed possession of the feedlot soon after the December 1974 purchase and continuously used quantities of the alfalfa from December 1974 through February 1975. In March of 1975 Cox's feedlot manager met with representatives of Mesa. At the March meeting the parties agreed that Cox would receive a reduction of the contract price of $65 per ton to $60 per ton for his accelerated use of all the hay within six months from the contract date rather than the one year period provided for in the contract. Thereafter Cox used substantial quantities of hay in March and April of 1975. In April of 1975 Cox had two firms analyze the alfalfa. There is no evidence that the results of these analyses was forwarded to Mesa as Cox's notification of nonconformity of baled alfalfa with reservation of rights. We are persuaded that the questions of reasonable notice on the baled alfalfa used during these months were for the trier of facts. The failure to request or submit such issues constituted an omission under Rule 279 of the Texas Rules of Civil Procedure. Cox failed to conclusively establish that notice was given regarding the baled alfalfa. Thus, these issues are deemed found in support of the judgment. Rule 279.

█ We next address Cox's contention that the evidence conclusively established notice with regard to the "old" and "new" silage. We have reviewed the record and found an absence of testimony indicating that Cox notified Mesa that the "old" and "new" silage was considered unmerchantable. Cox also argues that the court erred in

determining that the June 3, 1975, letter "did not constitute notice as to the other feedstuffs" ("old" and "new" silage). In this regard, Cox directs our attention to the first line of the letter, which states, "We have communicated with you on several occasions with respect to the Purchase and Sale Agreement dated December 16, 1974 (the "Contract"), and specifically Paragraph 1(c) thereof, which refers to the purchase of baled alfalfa and silage located at the Randall County Feedyard." This sentence contains the letter's only reference to silage. The sentence does not indicate the nature of any previous communications. The remainder of the letter addresses only the alleged unmerchantability of the baled alfalfa. When viewed in context with the entire letter, the introductory sentence fails to establish notice of unmerchantability of the "old" and "new" silage. We conclude that Cox failed to conclusively establish notice to Mesa of unmerchantability of the "old" and "new" silage within a reasonable time after he discovered or should have discovered the breach.

■ Cox further contends that the general instructions contained in the court's charge, when read in connection with the jury findings of unmerchantability of the feed commodities, are sufficient to support a finding that reasonable notice was given to Mesa on all three feed commodities. In support of his position Cox directs us to portions of Rule 277 of the Texas Rules of Civil Procedure which gives the trial court discretion with respect to submitting issues broadly with "explanatory instructions and definitions as shall be proper to enable the jury to render a verdict . . . ." The only reference to notice contained in the court's charge is: "A rejection of goods must be within a reasonable time after their delivery or tender. Rejection is ineffective unless the buyer reasonably notifies the seller." This instruction does not purport to charge on the notice prescribed in section 2.607(c)(1) of the Business and Commerce Code concerning accepted goods. Therefore, we are not persuaded that the abstract and unrelated instruction concerning reasonable notice of rejected goods is converted by Rule 277 into an implied jury finding of notice of unmerchantability within a reasonable time after Cox discovered or should have discovered the breach.

■ We also disagree with Cox's contention that "[s]ince Mesa failed to deny under oath reasonable notice, such fact was deemed admitted under Tex.R.Civ.P. 93." For support Cox directs us to the opening paragraph of Rule 93 and subparagraph (m). These provisions are not applicable to this case. The contract between the parties does not prescribe a time limit within which notice of proof of claim must be given to Mesa as a prerequisite for Cox to bring an action thereunder. 2 R. McDonald, Texas Civil Practice § 7.32 (rev. 1970).

Our discussion is dispositive of Cox's first nine points of error. None of them presents reversible error and each is overruled.

Cox's final point of error claims:
*Point of Error No. Ten.* The trial court erred in entering judgment that Mesa is entitled to receive $103,004.43 from Cox for 6,319.29 tons of "new" silage used during December, 1975, through June, 1976, at a price of $16.30 per ton, *for the reason that said judgment is contrary to the jury finding that the reasonable cash market value of the "new" silage at the time such silage was used or rejected was $15.00 per ton* (emphasis added).

For Cox to prevail on this contention it was essential that he conclusively establish the required notice of unmerchantability of such commodity or obtain a favorable finding thereon. He did neither. However, in his brief in support of the point, Cox also maintains that the trial court erred in calculating the amount due under the contract for the "new" silage at $16.30 per ton.

The contract between the parties provided for payment of "new" silage at "the average price per ton paid by Mesa (which average price will not exceed $20) . . ." At the trial Mesa introduced evidence of $1.00 to $1.50 per ton package costs as a part of its "average price per ton paid" for the new silage. Cox objected to the admis-

sibility of the testimony contending that the package cost was not a part of the contract price. The trial court ruled that the testimony was admissible, and that the packing cost was a part of Mesa's price for the new silage. The jury found that "the average price per ton paid, after shrink, without regard to packing cost, by Mesa for new ensilage at the time it was purchased" was $15.30 per ton.

This case was tried to a jury prior to the amendment of Rule 324 of the Texas Rules of Civil Procedure.[2] Cox did not file a motion for new trial attacking either the court's admission of the evidence on packing costs or its ruling that packing costs constituted a part of Mesa's price for new silage. Neither Cox's motion for judgment on the verdict nor Mesa's motion for judgment notwithstanding the verdict questioned the propriety of the $1.00 packing cost being included in the contract price for new silage. Only Mesa, in its motion for judgment on the cross-action, raised the $1.00 packing cost by requesting that it be added to the jury finding of $15.30 per ton. Under the procedural posture of this case, we conclude that Cox has failed to preserve error in relation to the $1.00 packing cost. Tex.R.Civ.P. 324 (1977); *State Farm Mutual Automobile Insurance Company v. Cowley*, 468 S.W.2d 353 (Tex.1971). Cox's tenth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

2. Rule 324 was amended, effective January 1, 1978. Prior to the amendment, the rule stated: "In all cases tried in the county or district court, where parties desire to appeal from a judgment of the trial court, a motion for new trial shall be filed as a prerequisite to appeal; provided that neither a motion for new trial nor an assignment therein shall be a prerequisite to the right to complain on appeal of the action of the court in giving a peremptory instruction, or in withdrawing the case from the jury and rendering judgment, or in rendering or refusing to render judgment non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, or in overruling a motion for judgment on the verdict made by the party who becomes appellant . . . ."